UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU,<br><br>          Plaintiff,<br><br>     v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY,<br><br>          Defendants.<br>_____/ | No. C 11-1747 MEJ<br><br>**QUESTIONS FOR<br>MARCH 29, 2012 HEARING** |

The Court has reviewed the papers in connection with the parties' cross-motions for summary judgment. To assist the Court in its consideration of the pending motions, the Court issues the following questions for the parties to address at the March 29, 2012 hearing. The parties should use these as a guide for framing their oral argument before the Court. The parties, however, will not be restricted to only addressing the questions below. Also, if either of the parties wish to file a supplemental brief regarding the questions below, they may do so as long as it is filed before March 28, 2012 at 5:00 p.m. and does not exceed five pages in length.

1.     In its motion for summary judgment, AAA argues that because the "other insurance" clauses at issue here conflict with each other, the Court must follow *Fireman's Fund Insurance Company v. Maryland Casualty Company*, 65 Cal.App.4th 1279, 1305 (1998), and find that both insurers should contribute pro rata to the underlying claim. Dkt. No. 28 at 15. Progressive's opposition, however, points out that its "other insurance" clause — similar to clauses from some automobile insurance policies — specifically provides that when liability arises from non-"covered watercraft," such as the paddleboat, then Progressive acts as the excess insurer to "any other collectible insurance." Dkt. No. 30 at 4 (quoting Progressive's policy). In its reply, AAA appears to

move away from its argument in the moving papers and concede that Progressive's policy is excess under certain circumstances. Dkt. No. 32 at 3. According to AAA, Progressive's policy is only excess when liability arises from the insured using a non-"covered watercraft" and that watercraft's owner has a primary liability policy. *Id.* Because the paddleboat was not insured by another primary boat policy, AAA contends that the excess language in Progressive's "other insurance" clause has no application here. *Id.*

Several questions are raised by the parties' arguments that are not addressed in their briefs. For instance, is AAA correct that the "excess" language in Progressive's "other insurance" clause only gets triggered if there is another primary boat policy that covers liability (i.e., the only way that Progressive would be the excess insurer is if the paddleboat at issue in the underlying claim was insured under another primary boat policy)? What happens in situations such as these where the paddleboat is not insured by another primary boat policy, but there is collectible other insurance such as AAA's homeowner's policy?

Can the Court look to analogous automobile insurance policies in ruling on this matter? If so, is the "excess" language Progressive uses in its "other insurance" clause analogous to the "excess" language used in "other insurance" clauses of automobile policies? Are these automobile policies treated as excess when an insured operates a non-covered car and that car's owner has a primary liability policy (i.e., if an insured borrows a friend's car and gets in a car accident, is his insurance excess and his friend's insurance primary?) In the same hypothetical, what if that car's owner does not have a primary liability policy but there is other "collectible insurance" such as a homeowner's policy like AAA's (i.e., if an insured borrows a friend's car and gets in a car accident, is his insurance excess and the homeowner's insurance primary)? Are there any cases that discuss these issues?

2. Progressive's policy provides a definition for "covered watercraft." But it does not appear to provide a definition for "watercraft." Is that correct? If not, where does the policy define "watercraft" and what does the definition provide?

3. AAA cites *Fireman's Fund* for the proposition that "courts have routinely held that an agreement between the carriers will prevail over the policy language." Dkt. No. 28 at 15. The Court

has reviewed AAA's pinpoint citation and does not believe it is accurate. Neither of the parties cite any other case law that explains whether insurers can reach an agreement to override the language in their contract, and, if so, what this agreement must contain in order for it to be valid, including whether it needs to be in writing. Both parties should be prepared to discuss the black letter law with respect to this issue.

   4. Similarly, the parties should be prepared to discuss the black letter law regarding waiver in the insurance context, particularly with respect to the relationship between primary and excess insurers. Can AAA provide any case law, besides *Fireman's Fund*, to support its position that an insurer must specifically raise that it is an excess insurer when the underlying lawsuit is filed or else it will be considered a primary insurer?

   5. In the underlying litigation, did Progressive ever raise the issue to AAA that it believed it was the excess insurer? If so, when and how? If not, why did it fail to raise this issue until now?

   6. Progressive argues that even if this Court finds that it is not an excess insurer, the Court cannot grant summary judgment to AAA because there is a genuine dispute whether Progressive had any liability exposure. Assuming Progressive's reservation of rights letter was valid, is the Court first required to determine whether Progressive had liability exposure under the circumstances of the underlying lawsuit? Does AAA agree that the only way Progressive's policy would be triggered is if the paddleboat was a "covered watercraft" or a permissively used non-"covered watercraft"? Does the Court have enough information to rule on this issue?

   **IT IS SO ORDERED.**

Dated: March 27, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

3