UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU,<br><br>            Plaintiff,<br>    v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY,<br><br>            Defendants.<br>_____/ | No. C 11-1747 MEJ<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>**[RE: DOCKET NOS. 19 AND 28]** |

## I. INTRODUCTION

This is an insurance coverage dispute between Plaintiff California State Automobile Association Inter-Insurance Bureau (AAA)[1] and Defendant Progressive Casualty Insurance Company (Progressive). On February 21, 2012, both parties filed motions for summary judgment. Dkt. Nos. 19 and 28. The parties have fully briefed these motions and also submitted supplemental briefs to address the Court's questions at the hearing. Dkt. Nos. 34-36. Having reviewed the parties' briefs and considered the arguments of counsel, the Court GRANTS Progressive's motion and DENIES AAA's motion for the reasons explained below.

## II. BACKGROUND[2]

In 2008, Michael App and his friends Josh and Jeff Vieira were riding at night in an unlighted

---

[1] After this case was filed, CSAA became the AAA NCNU Insurance Exchange.

[2] The Court provides the summary of the parties' dispute for background purposes only. These facts are not contested and are based on the parties' joint statements of material facts which were submitted with their motions for summary judgment.

paddleboat in the Stockton Delta. The three men were forced to jump from the paddleboat when a motorized boat crashed into it. App died as a result of the collision. His estate subsequently filed a wrongful death lawsuit against multiple defendants, including the driver of the motorized boat as well as Josh, Jeff, and their father, Louis Vieira.

At the time of the accident, Louis Vieira had a homeowner's insurance policy with AAA and a watercraft policy with Progressive. Both policies had liability limits of $500,000. Eventually, both AAA and Progressive provided a defense and indemnity to the Vieiras under various reservations of rights. After the parties participated in a mediation, App's estate made a settlement demand for $800,000. AAA believed that this demand was reasonable and should be split between the two insurers.[3] Progressive, however, was only willing to offer $300,000 to settle the case. While the parties disagree about some of the details regarding their negotiations, the case was ultimately settled in 2010 for $800,000, with AAA contributing $500,000 to the settlement and Progressive only contributing $300,000.

In 2011, AAA initiated this action against Progressive in Contra Costa County Superior Court, which Progressive then removed to this Court. Dkt. No. 1. AAA's operative complaint asserts causes of action for declaratory relief and equitable subrogation against Progressive. Dkt. No. 17. Essentially, AAA contends that it and Progressive were co-primary insurers and should have evenly split the $800,000 settlement payment. AAA consequently seeks a $100,000 reimbursement from Progressive as well as interests and costs. In defending this lawsuit, Progressive claims — for what appears to be the very first time in its dealings with AAA — that it is the excess insurer while AAA is the primary insurer. According to Progressive, AAA is not entitled to any reimbursement because as the primary insurer it was responsible for paying its policy limit of $500,000 before Progressive's policy was even triggered. Both parties have filed motions for summary judgment with respect to AAA's operative complaint.

---

[3] AAA was under the assumption that it was a co-primary insurer with Progressive, mainly because it appears that Progressive had not yet contended that it was an excess insurer at this time.

2

### III. LEGAL STANDARD

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted). On summary judgment, courts are required to view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### IV. DISCUSSION

The first issue that the Court must consider on these motions is whether AAA and Progressive are co-primary insurers that were required to equally share the Vieiras' defense and indemnity costs. If the Court answers this question in the negative and finds that Progressive is the excess insurer — and also concludes that there is no waiver or agreement to the contrary — then AAA's complaint for reimbursement fails as a matter of law. This is because, under these circumstances, AAA would have been required to finance the underlying settlement of $800,000 with its $500,000 policy limit, and Progressive would have only been responsible for the remaining $300,000 as the excess insurer. Since these were the exact amounts that the parties paid out in the settlement, the Court would not need to go any further and the other arguments in the parties' motions for summary judgment would be moot. For this reason, the Court begins its analysis with this first issue by examining AAA's and Progressive's insurance policies, particularly their "other insurance" clauses.

1   Under California law,[4] "the interpretation of an insurance policy is a question of law and
2   follows the general rules of contract interpretation." *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40
3   Cal.4th 19, 27 (2006) (citations omitted). Words in the insurance policy must be read in their plain
4   and ordinary sense and ambiguity cannot be based on a strained rather than reasonable interpretation
5   of the policy's terms. *McKee v. State Farm Fire & Cas., Co.*, 145 Cal.App.3d 772, 776 (1983)
6   (citations omitted). "Policies of insurance, like other contracts, must be read as a whole with each
7   part being read in conjunction with other portions thereof." *Hartford Accident & Indemnity Co. v.*
8   *Sequoia Ins. Co.*, 211 Cal.App.3d 1285, 1298 (1989) (citations and quotations omitted).

9   Here, the parties dispute the effect of the "other insurance" clauses in their policies once
10  liability is triggered. AAA's other insurance clause provides that:

> This insurance is excess over any other valid and collectible insurance except
> insurance written specifically to cover as excess over the limits of liability that apply
> in this policy.

13  Joint Statement of Material Facts in Support of AAA's Motion (JSF) ¶ 2, Dkt. No. 28. Conversely,
14  Progressive's other insurance clause states:

> If there is other applicable liability insurance or bond, we will pay only our share of
> the damages. Our share is the proportion that our Limit of Liability bears to the total
> applicable limits. However, any insurance we provide for the ownership, maintenance
> or use of a watercraft, other than a covered watercraft, shall be excess over any other
> collectible insurance, self-insurance, or bond.

18  JSF ¶ 3. In its motion, AAA argues that these two other insurance clauses directly conflict with each
19  other. Relying on *Fireman's Fund Insurance Company v. Maryland Casualty Company*, AAA
20  contends that California law holds that when two other insurance clauses are in conflict, to enforce
21  one or the other would be inequitable, and the right solution is to require the insurers to share
22  expenses on a pro rata basis. 65 Cal.App.4th 1279, 1305 (1998).

23  AAA is correct that the "modern trend is to require contribution where there is the same level
24  of insurance for the same risk, regardless of 'other insurance' language." *Edmondson Prop. Mgmt. v.*

---

[4] Both parties agree that California law applies to this dispute.

4

*Kwock*, 156 Cal.App.4th 197, 203 (2007).[5] But, as Progressive points out, this modern trend and the rule from *Fireman's Fund* should only apply if there is an actual conflict between the two other insurance clauses. Reading the clauses at issue here, in their plain and ordinary sense, this Court finds that they do not conflict. AAA's other insurance clause contains general excess language that attempts to escape liability whenever there is any other applicable primary insurance. *See* JSF ¶ 2. Progressive's other insurance clause, conversely, is much more specific than this. It first provides that Progressive's policy will be treated as pro rata with any other primary policy. It then, however, carves out one specific exception: when liability arises out of the use of a watercraft, *other than a covered watercraft*, Progressive's policy will be excess over any other collectible insurance. *See* JSF ¶ 3. As AAA has not alleged that the paddleboat was a covered watercraft, this exception applies here.[6] Thus, because liability arises from the paddleboat, which is not a covered watercraft, Progressive's other insurance clause explicitly provides that it will be excess to any other collectible insurance, which in this case is AAA's.

   AAA's reply appears to concede that the other insurance clauses at issue here are not exactly the same and Progressive's policy would be excess under a certain scenario. Dkt. No. 32 at 3. AAA

---

[5] AAA cites to *Dart Industries, Inc. v. Commercial Union Insurance Company*, where the California Supreme Court also noted that the modern trend is to ignore other insurance clauses and require equitable contribution on a pro rata basis from all primary insurers. 28 Cal.4th 1059, 1080 (2002). But, as explained in *Financial Pacific Insurance Company v. Amco Insurance Company*, "the court in *Dart* did not decide the question of whether 'other insurance' clauses control in disputes between two insurers." 2007 WL 685856, at *2 (N.D. Cal. Mar. 5, 2007) (noting that *Dart* did not reach the issue of whether or not the modern trend it discussed is universally applicable). Moreover, *Dart*'s dicta would only apply to insurers at the same level of risk that had mutually repugnant other insurance clauses, which the Court finds is not present here.

[6] In its supplemental brief, AAA argues that the paddleboat is "portable boating equipment" rather than "watercraft" pursuant to Progressive's policy. Dkt. No. 36. "Watercraft" is defined to include "a boat or other craft that is designed for use on water." Compl., Ex. B at 5. "Portable boating equipment" is defined as "detachable boating equipment customarily kept in or on a covered watercraft for the maintenance or use of the watercraft," including "water skis and other water sports equipment." *Id.* Under these definitions, finding that the paddleboat is not a craft designed for use on the water and is instead something that is kept in another watercraft, such as sports equipment, would be a huge leap that this Court declines to take.

5

1  explains that "if the paddleboat had been insured with a boat policy of an owner, that policy would
2  have been primary to the Progressive policy." *Id.*  But, because the "paddleboat was not insured, the
3  Progressive 'excess' language is irrelevant." *Id.*  For the Court to accept this interpretation, it would
4  have to insert language into Progressive's other insurance clause that is simply not there.  AAA's
5  argument essentially changes the language in the other insurance clause from "shall be excess *over*
6  *any other collectible insurance*" to "shall be excess *over any other collectible insurance for that*
7  *watercraft*."  This would not be proper.  Progressive's policy is excess to *any* collectible insurance,
8  and not just other primary boat policies.  In other words, Progressive's excess language results in
9  Progressive specifically agreeing with its insured that it will be the excess insurer when liability
10 arises from noncovered watercraft, such as the paddleboat, and there is other collectible insurance,
11 such as AAA's homeowner's policy.  This is much different than AAA's other insurance clause
12 which seeks to always escape responsibility if there is other primary insurance coverage.[7]

13       Progressive's position is supported by several courts that have analyzed competing other
14 insurance clauses after the decision in *Fireman's Fund*.  In *Hartford Casualty Insurance Company v.*
15 *Travelers Indemnity Company*, the Court distinguished *Fireman's Fund* as follows:

> Another reason for enforcing the terms of the policy in this case is that the language in
> the Hartford and Travelers policies does not conflict.  As noted in *Fireman's Fund* and
> *Commerce & Industry*, the problem posed to those courts involved policies that each
> claimed to be excess whenever there was other insurance.  Literal enforcement of the
> policy language would have left the insured without coverage.  This equitable
> consideration led the courts to ignore the excess only clauses because they in fact
> would serve as escape clauses for the insurers — a result that could not have been
> intended by the policyholders.
>
> Equity should not be employed to override the terms of the insurance policies in this
> case.  By its terms, the Hartford policy is primary except in specified instances that do
> not apply in this case.  The Travelers policy is primary except in the specific instance
> that does apply in this case — when the insured is named as an additional insured
> under another policy, which makes the Travelers policy excess by definition.  Because
> the policy terms, as they apply in this case, do not conflict or offend public policy and
> do not infringe on any rights of the insured, there is no reason to disregard the express
> terms of both policies.

---

[7] Notably, AAA's other insurance clause provides that it will be primary and not excess if there is another insurer that has specifically reserved its right to be excess.  That is the case here since Progressive's excess clause is triggered due to liability arising from a non-covered watercraft.

6

110 Cal.App.4th 710, 727 (2003) (internal citations omitted).  Like Travelers' policy, Progressive's policy is excess in one specific scenario — where a noncovered watercraft is involved and there is other collectible insurance.  This does not conflict with AAA's other insurance clause, offend public policy, or infringe on the Vieiras' rights, and consequently there is no reason to disregard its express terms.

The district court in *Peerless Insurance Company v. St. Paul Surplus Lines Insurance Company* came to the same conclusion as *Hartford* when analyzing similar policies.  2010 WL 2486795, at *9 (S.D. Cal. June 15, 2010).  In evaluating the other insurance clauses, the court noted that St. Paul's clause contained a specific exception to primary coverage that was triggered while Peerless's excess language was not triggered.  *Id.*  The court held that Peerless was the primary insurer and St. Paul was the excess insurer, providing the following explanation:

> It is undisputed that the Court has discretion to apply principles of equity in interpreting the terms of the policies.  To be sure, *Hartford* recognized that this was an equitable determination.  But, the *Hartford* and *Fireman's Fund* courts both also properly noted that "contractual terms of insurance coverage are honored whenever possible.  The courts will generally honor the language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue."  In *Hartford*, the court did not allow the equities to override the unambiguous express language in the policies, which did not prejudice the insured, did not run afoul of public policy, and explicitly provided that one insurer was primary and the other excess.  The Court finds the same here.  The policies are not in conflict, the insured is not prejudiced as it still receives full defense and indemnity, and both St. Paul and Peerless are providing coverage to the extent expressly set forth in their policies.  Any alleged inequities do not override this determination.

*Id.* at *10 (internal citations and quotations omitted).  *See also Fin. Pac. Ins. Co. v. Amco Ins. Co.*, 2007 WL 685856, at *2-3 (N.D. Cal. Mar. 5, 2007) (holding that the other insurance clauses did not conflict because the defendant's policy contained a specific exception that it would be excess since the insured was added to the plaintiff's policy).  The rationale from *Hartford* and *Peerless* apply directly to this matter.  The other insurance clauses at issue here do not conflict with each other, and the Vieiras were not prejudiced as they still received a full defense and indemnity.  There is no equitable reason to override the express language of the policies which provided that AAA was primary, and Progressive, under the circumstances, was excess.

To avoid the conclusion that Progressive is the excess insurer, AAA argues that regardless of

7

the other insurance clauses, it and Progressive were co-primary insurers for two reasons: (1) an agreement was reached to this effect; and (2) Progressive waived its right to claim that it was an excess carrier.[8] AAA correctly points out that Progressive, after deciding to provide the Vieiras with a defense under a reservation of rights (ROR), appeared to have assumed that it was a co-primary insurer with AAA for the duration of the underlying litigation. The Court specifically asked Progressive if it ever asserted at any time before the filing of this lawsuit that it was the excess insurer and AAA was the primary insurer. Dkt. No. 34. Progressive did not specifically respond to this question and it has not pointed to any direct evidence which shows that it ever claimed to be the excess insurer during the time of the underlying litigation.

Nonetheless, these arguments from AAA do not help it withstand summary judgment. Both parties agree that Progressive acknowledged that it was providing coverage for the Vieiras, but it was doing so under a ROR with respect to the ownership of the paddleboat. JSF ¶¶ 4, 6. Progressive's last ROR letters to Jeff and Joshua Vieira explicitly provided as follows:

> The reservation of rights means that we reserve our right to deny coverage under the policy. No action taken thus far, nor any taken in the future, to investigate, explore settlement, settle, make payments or defend this claim should be deemed to be an admission of coverage under the referenced policy. Progressive Casualty Insurance Company reserves its rights to deny coverage under the referenced policy, to refuse to make any payments under the policy, to further litigate any coverage issues and to seek reimbursement of any amounts paid under the policy for loss, damage, costs, or fees.

Carbone Decl., Exs. 5 and 6, Dkt. No. 28. Moreover, the ROR letters specifically stated that Progressive may not provide coverage because "the paddleboat would not qualify as a 'covered watercraft.'" *Id.* Similarly, in a ROR letter to Louis Vieira, Progressive warned that it may not provide coverage if the paddleboat does not meet the definition of a covered watercraft. Farmer Decl., Ex. A, Dkt. No. 31. Progressive wrote that it reserves its rights to "withdraw from or decline any further participation in the defense" and "enforce all terms and conditions of the policy." *Id.*

---

[8] In its supplemental brief, AAA raises for the first time that Progressive should also be estopped from claiming that it is an excess insurer. The Court does not consider this newly raised argument regarding the doctrine of estoppel since it was not raised in AAA's moving papers or its opposition to Progressive's summary judgment motion. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

1    AAA ignores these ROR letters and argues that Progressive never reserved its rights regarding
2 its relationship with AAA, particularly that it was claiming to be the excess insurer. AAA does not
3 provide any authority for the proposition that an insurer must reserve its rights with another insurer
4 and not only the insured. Moreover, Progressive's ROR letters — whether Progressive intended to or
5 not — do protect its rights against AAA. In these letters, as AAA concedes, Progressive provides
6 that the paddleboat may not be a covered watercraft. If the paddleboat is not a covered watercraft,
7 then, under the terms of Progressive's other insurance clause, Progressive would be the excess
8 insurer. Accordingly, the ROR letters effectively permit Progressive to later assert that it is the
9 excess insurer, depending on how the issue of coverage is resolved.

10    In any event, AAA's position with respect to this issue is illogical. AAA essentially argues
11 that even if Progressive later learned that it did not have to indemnify the Vieiras — whether this was
12 because the Vieira sons were determined to not be insureds under the policy or the paddleboat did not
13 qualify as a watercraft — Progressive would still have to pay $300,000 to AAA because it had earlier
14 agreed that it was a co-primary insurer and waived its rights to be the excess insurer. This cannot be
15 the case since it would render the ROR letters completely meaningless. It would also encourage
16 insurers to not provide a defense to their insureds out of fear that it will require them to eventually
17 contribute to a settlement, even if they later determined that there was no coverage. From a policy
18 perspective, this is not the right result since courts want to encourage insurers to provide coverage for
19 their insureds. Accordingly, the Court finds that there is no genuine dispute that Progressive did not
20 waive its rights as an excess insurer and agree to be a co-primary insurer.[9]

## V. CONCLUSION

22    For the foregoing reasons, the Court finds that Progressive was the excess insurer in the
23 underlying litigation. Because AAA was required to contribute $500,000 to the underlying
24 settlement

---

[9] The Court notes that it is not concerned that other insurers will follow in the footsteps of Progressive and fail to immediately raise their excess status, if they have one. Any insurer that believes they are excess will likely assert this as soon as possible in the underlying litigation rather than going through the time and expense that Progressive has had to go through with this dispute.

9

as the primary insurer, its claim for declaratory relief and equitable subrogation fail as a matter of law.  Accordingly, the Court GRANTS Progressive's motion for summary judgment and DENIES AAA's

motion for summary judgment on the grounds discussed above.

**IT IS SO ORDERED.**

Dated: April 25, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge